United States District Court
Southern District of Texas
**ENTERED**
April 07, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| VS. | § | CRIMINAL ACTION NO. 4:16-CR-0004-2 |
| LEONEL MATA LUNA | § § § § § | |

## ORDER

Pending before this Court is Defendant Leonel Mata Luna's ("Defendant") Motion to Dismiss Specific Counts of the Indictment (Doc. No. 833), Motion to Dismiss the Indictment (Doc. No. 857), and Revised Motion to Withdraw Guilty Plea and to Continue Revocation Proceedings (Doc. No. 900). The Government filed a Response in Opposition to the Motion to Withdraw and a Response to each of the Motions to Dismiss. (Doc. No. 903, 905, 906). Upon close consideration of the briefing and relevant legal standards, the Court hereby **DENIES** Defendant's Motions to Dismiss (Doc. Nos. 833, 857) and Motion to Withdraw (Doc. No. 900).

## I.    Factual Background

While the background of this case is important, the Court will limit its recitation to those facts pertinent to the pending Motions to Dismiss and Motion to Withdraw. The Government first filed charges against the Defendant in the Sealed Superseding Indictment (Doc. No. 29), which was filed with this Court on April 28, 2016. The Government subsequently filed a Fourth Superseding Indictment (Doc. No. 477). On September 6, 2023, the Defendant pled guilty to Count One of the Fourth Superseding Indictment that charges the

Defendant with conspiracy to possess with intent to distribute controlled substance of 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(A). (Doc. Nos. 477, 768). Count One of the Fourth Superseding Indictment alleges, in pertinent part, that the Defendant, along with several co-defendants, "[b]etween on or about January 1, 2010 and continuing up to the date of the Indictment . . . did knowingly and intentionally conspire and agree with each other and with other persons known and unknown to the Grand Jurors to possess with intent to distribute a controlled substance." (Doc. No. 768).

After the Defendant pled guilty to Count One of the Fourth Superseding Indictment, the Defendant began to express concerns about his attorney. *See, e.g.*, (Doc. No. 801). While not expressing an opinion on the Defendant's relationship with his prior counsel, on March 21, 2024, the Court granted the Defendant's requests for the appointment of new counsel and appointed Justin Gordon Dees to serve as the Defendant's new counsel. (Doc. No. 813). In October 2025, after the Defendant again raised concerns about his relationship with his new attorney, the Court held a hearing on the issue and appointed Anthony P. Troiani as additional counsel to assist with this case through the sentencing stage of the proceedings. (Doc. No. 884).

Long after the Defendant pled guilty to Count One of the Fourth Superseding Indictment, the Defendant filed two Motions to Dismiss and now seeks to withdraw his guilty plea under Federal Rule of Criminal Procedure 11(d)(2). The Defendant argues that because his former counsel failed to "investigate or advise [him] of a potentially dispositive statute-of-limitations issue defense," his plea was neither made knowingly nor voluntarily. (Doc. No.

900). In other words, the Defendant argues that he would not have pled guilty if he knew that case against him was barred by the statute of limitations. The Court addresses the pending Motions below.

## II.　Analysis

### A. Motions to Dismiss

The Defendant filed two Motions to Dismiss with the Court. First, the Defendant requests the Court to "dismiss all counts of the indictment that incorrectly allege that methamphetamine is a schedule II controlled substance." (Doc. No. 833). Second, the Defendant argues that the "offenses alleged in the indictment occurred between 2010 and 2016, yet the Defendant was not brought to answer the charges until 2022, more than six years after the latest alleged overt acts." (Doc. No. 857). The Court addresses each of these arguments, in turn.

"The purpose of an indictment is 'to allege each essential element of the offense charged so as to enable the accused to prepare his defense and to allow the accused to invoke the double jeopardy clause in any subsequent proceeding.'" *United States v. Lawrence*, 727 F.3d 386, 397 (5th Cir. 2013) (quoting *United States v. Cluck*, 143 F.3d 174, 178 (5th Cir. 1998)). An indictment is sufficient if it "contains the elements of the offense charged and fairly informs the defendant of the charge against which he must defend." *Id.* (quoting *United States v. Fuller*, 974 F.2d 1474, 1480 (5th Cir. 1992)). When reviewing the sufficiency of an indictment to determine whether it states an offense, "the court is required to take the allegations of the indictment as true and to determine whether an offense has been stated." *United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011) (citing *United States v. Hogue*,

3

132 F.3d 1087, 1089 (5th Cir. 1998)). A court must deny a motion to dismiss if it relies on disputed facts. *Id.*; *United States v. Kay*, 359 F.3d 738, 742 (5th Cir. 2004).

The Court first addresses the Defendant's argument that any counts listing methamphetamine as a Schedule II controlled substance should be dismissed because "Schedule II covers only meth in an injectable liquid." (Doc. No. 833). The Court notes that the Defendant only pled guilty to Count One of the Fourth Superseding Indictment, which does not concern methamphetamine. *See* (Doc. No. 477). Count One only pertains to the conspiracy to possess with an intent to distribute cocaine. (*Id.*).[1] Nevertheless, in the written plea agreement, the Government has already agreed to "move to dismiss any remaining counts of the Fourth Superseding Indictment and all prior Indictments pending against the defendant at the time of sentencing." (*Id.*). Accordingly, the Government has already agreed to recommend to the Court that it dismiss any and all counts other than Count One of the Fourth Superseding Indictment. Thus, the part of the Defendant's Motion to Dismiss as to the other counts or other indictments is, at its best, premature, as any dismissal in that regard will be considered at sentencing or at some time before a judgment is entered. The Court therefore **DENIES** the Defendant's Motion to Dismiss (Doc. No. 833).

The Court next addresses the Defendant's request to dismiss all pending indictments against him pursuant to the statute of limitations and alleged due process violations. (Doc. No.

---

[1] The Court notes that Count Nine of the Superseding Indictment (Doc. No. 29) does refer to methamphetamine as a Schedule II substance, but the Government did not charge this Defendant with that Count. (*Id.* at 10). There are no other charges against this Defendant or any co-defendant that mention methamphetamine. Moreover, there are no allegations concerning methamphetamine in the Fourth Superseding Indictment. *See* (Doc. No. 477).

857). The Defendant argues that because the indictments in this matter were sealed, "[t]he Defendant first became aware of the existence of any indictment only after his extradition to the United States in September 2022." (*Id.*). He contends that the "prolonged sealing of the indictments deprived the Defendant of his constitutional right to timely notice and the ability to prepare a defense." (*Id.*). Moreover, given that the "offenses alleged in the indictments occurred between 2010 and 2016" and he "was not brought to answers the charges until 2022," the five-year statute of limitations period had expired.

As a preliminary matter, the Defendant admits he has had access to all charges and to legal representation since he was arrested in September 2022. He has not been denied due process.

With regard to his limitations argument, "a properly sealed indictment does indeed toll the statute of limitations, absent a showing of substantive and actual prejudice." *United States v. Boswell*, 109 F.4th 368, 379 (5th Cir. 2024) (quoting *United States v. Sharpe*, 995 F.2d 49, 50 (5th Cir. 1993)). "To determine whether the indictment was properly sealed and thus tolled the statute of limitations, the [C]ourt first must consider whether the indictment was sealed for any legitimate prosecutorial objective or where the public interest required it." *Id.* The following timeline tracks the dates and times of the relevant filings:

- On April 28, 2016, the grand jury returned the Superseding Indictment against the Defendant. (Doc. No. 29). The Government filed a Motion to Seal Superseding Indictment on the same day. (Doc. No. 31). The Government requested the Court "to seal the Criminal Superseding Indictment in the case . . . until the defendants named above ha[ve] been arrested, at which time the Superseding Indictment, Motion, and Order will automatically be unsealed as to the defendant without further order of the Court." (*Id.*).

- On February 21, 2019, the Government filed a Sealed Fourth Superseding Indictment as to the Defendant. (Doc. No. 477). The Government requested to seal this Indictment until the Defendant has been arrested, and the Court granted the request. (Doc. Nos. 479, 480).

- On September 21, 2022, the Defendant was arrested in Laredo, Texas. (Doc. No. 741).

The Government requested the Superseding Indictment and the Fourth Superseding Indictment to be sealed until the bench warrant against the Defendant was executed. Under Federal Rule of Criminal Procedure 6(e)(4), an indictment may be sealed until the defendant is in custody or has been released pending trial. One purpose of Rule 6(e)(4) is to "prevent the requirement of an indictment from serving as a public notice that would enable the defendant to avoid arrest." *United States v. Khoury*, 2018 WL 2864413, at *4 (S.D. Tex. June 11, 2018) (quoting *United States v. Muse*, 633 F.2d 1041, 1043–44 (2d Cir. 1980)). The Court finds that because the Government was unable to locate the Defendant and/or execute the pending bench warrant for his arrest from 2016 to 2022, the Indictments were properly sealed to prevent the Defendant from avoiding arrest. Therefore, the statute of limitations was tolled from the moment the Superseding Indictment was filed on April 28, 2016. *Boswell*, 109 F.4th at 379.

Given that the statute of limitations was tolled on April 28, 2016, the Court next addresses whether the Superseding Indictment was filed within the statute of limitations. It is undisputed that the statute of limitations for a conspiracy to distribute charge is five years. 18 U.S.C. § 3282 ("Except as otherwise expressly provided . . . no person shall be prosecuted . . . for any offense, not capital, unless the indictment is found, or the information is instituted within five years after such offense shall have been committed."). When conspiracy is charged, an "indictment satisfies the requirements of the statute of limitations if the government alleges and proves, at trial or pretrial, that the conspiracy continued into the limitations period." *U.S.*

6

*v. Lokey*, 945 F.2d 825, 832 (5th Cir. 1991) (quoting *United States v. Butler*, 792 F.2d 1528,

1532 (11th Cir. 1986)). In this case, Count One of the Superseding Indictment alleged that the

conspiracy to possess with the intent to distribute lasted "between on or about January 1, 2010

and continuing up to the date of the Indictment" on April 28, 2016. (Doc. No. 768). Given that

the admitted actions continued until just prior to the return of the Superseding Indictment, the

Indictment was filed within the applicable statute of limitations. The Defendant himself

admitted these facts during the rearraignment proceedings, when he agreed, under oath and in

open court, that the following facts are true:

> The defendant was a member of the organization residing in Monterrey, Nuevo Leon, Mexico, overseeing the receipt and packaging of the cocaine in Mexico and coordinating the transportation of the cocaine to the border of the United States in vehicles.
>
> Salinas-Lopez was a member responsible for the day-to-day operations in the Houston area that included receiving cocaine, delivering the cocaine, and maintaining stash houses.
>
> ***From December 4, 2015, to December 6, 2015***, law enforcement authorities intercepted telephone conversations between the defendant and Salinas-Lopez in which they discussed ***two loads of cocaine that the defendant would be sending to Houston***. The cocaine was to be imported from Mexico; concealed in vehicles driven by two coconspirators.
>
> On December 6, 2015, based on the intercepted telephone calls and contemporaneous surveillance, agents searched a motor vehicle being used by codefendant Jorge Alejandro Rangel-Plattner, a drug and money courier for the organization. Inside the vehicle, agents located a hidden compartment and found $431,245. ***The money was proceeds for the delivery of approximately 18 kilos—kilograms of cocaine delivered the day before. The 18 kilograms of cocaine were sent by the defendant from Mexico.***
>
> On December 6, 2015, agents executed three search warrants at stash houses in Houston. At one stash house, located at 8319 Glenalta Street, agents seized approximately 17 kilograms of cocaine and approximately $265,111. Agents also searched a white 2009 Suzuki Cordoba located on the property and

7

discovered $311,390 in a hidden compartment. *That money was proceeds from the sale of approximately 15 kilos of cocaine imported from Mexico and delivered to the stash house the prior day. The 37 kilograms of cocaine were sent by the defendant from Mexico.*

At the second stash house, located at 309 Pecan Grove Street, agents seized approximately $1,267,780 and a money counter. The money was proceeds from the sale of controlled substances.

At the third stash house, located at 810 Overbluff Street, agents seized approximately 4 kilograms of cocaine and $35,925. *The cocaine was sent by the defendant from Mexico, and the money was proceeds from the sale of controlled substances.*

The defendant knowingly entered into an agreement with at least one other person to possess with intent to distribute cocaine.

The defendant knew the unlawful purpose of the agreement and joined in it willfully, that is, with the intent to further its unlawful purpose.

The defendant furthered the unlawful purpose of the agreement by coordinating the receipt of cocaine in Mexico and its importation into the United States.

The overall scope of this conspiracy involved at least 5 kilograms of cocaine, and the defendant knew or reasonably should have known that the scope of the conspiracy involved at least 5 kilograms of cocaine.

(Doc. No. 898 at 16–19) (emphasis added). The Defendant admitted that this recitation of facts was true, and the Court accepted his guilty plea based upon his testimony. He not only agreed to these facts orally, but he also agreed to them in the written plea agreement that was signed by the Defendant. (Doc. Nos. 898 at 19; Doc. No. 768). Consequently, as late as December 2015, the Defendant was still involved in the drug trafficking conspiracy. That being the case, an indictment returned less than five months later is certainly timely.

Accordingly, the Defendant's Motion to Dismiss (Doc. No. 857) is **DENIED.**

### B. Motion to Withdraw Guilty Plea

The Court next addresses the Defendant's Motion to Withdraw Guilty Plea. A defendant may withdraw a guilty plea after the district court accepts the plea, but before it imposes a sentence, by showing a "fair and just reason" for seeking withdraw. FED. R. CRIM. P. 11(d)(2)(B); *U.S. v. Strother*, 977 F.3d 438, 443 (5th Cir. 2020). The burden for establishing this reason lies with the defendant. *Strother*, 977 F.3d at 443. "To determine whether a defendant may withdraw a guilty plea, the court must consider the following factors: (1) whether the defendant has asserted his innocence; (2) whether the government would suffer prejudice if the withdrawal motion were granted; (3) whether the defendant delayed in filing his withdrawal motion; (4) whether the withdrawal would substantially inconvenience the court; (5) whether close assistance of counsel was available to the defendant; (6) whether the original plea was knowing and voluntary; and (7) whether withdrawal would waste judicial resources." *Id.* (relying on the factors enumerated in *U.S. v. Carr*, 740 F.2d 339 (5th Cir. 1984)). "No single factor or combination of factors is dispositive, and the court must ultimately examine the totality of the circumstances." *Id.*

The Defendant requests the Court to withdraw his guilty plea because he lacked "close and effective assistance of counsel" at the time of his guilty plea because his former attorney did not "investigate or advise [him] of a potentially dispositive statute-of-limitations issue defense." (Doc. No. 900). While the Court must review the "totality of the circumstances" through the prism of the seven *Carr* factors, the Defendant primarily focuses on whether his claims would have been barred by the statute-of-limitations defense to show a "fair and just reason" for seeking withdraw. This Court will do the same in this Order.

As discussed above, it is undisputed that the statute of limitations for a conspiracy to distribute charge is five years. 18 U.S.C. § 3282 ("Except as otherwise expressly provided . . . no person shall be prosecuted . . . for any offense, not capital, unless the indictment is found, or the information is instituted within five years after such offense shall have been committed."). When conspiracy is charged, an "indictment satisfies the requirements of the statute of limitations if the government alleges and proves, at trial or pretrial, that the conspiracy continued into the limitations period." *Lokey*, 945 F.2d at 832.

In this case, the Defendant argues that the Presentence Investigation Report revealed that "[m]uch of the conduct attributed personally to [him] occurred by 2010" and "the indictment was returned years later and would be time-barred absent tolling or proof of continued conspiratorial conduct attributable to [the Defendant]." (*Id.* at 4). Further, the Defendant argues that any statutory tolling would not have applied in this case because the Presentence Report did "not identify any finding that [he] fled to avoid prosecution or was ever declared a fugitive." (*Id.*). The Defendant contends that the Presentence Report is evidence that his statute-of-limitations defense may have been dispositive in this case. Nevertheless, the recitation of facts to which he agreed to under oath demonstrated that the conspiracy was quite active in 2015. It also shows that that the Defendant was still playing an active role in that conspiracy in December of 2015. The Court finds that conspiracy is a continuing offense. *See Romo-DeLeon v. United States*, No. 4:14-CR-91, 2019 WL 3955714, at *3 (E.D. Tex. July 31, 2019), *report and recommendation adopted*, 2019 WL 3934683 (E.D. Tex. Aug. 19, 2019). As such, there may have been 2010 illegal conduct in which the Defendant was involved in,

but there was also illegal conduct that occurred well within the limitations period. The Defendant pled guilty to conduct that occurred within the statute of limitations period.

Having addressed the crux of the Defendant's argument, the Court next addresses the seven *Carr* factors to determine whether a withdrawal is appropriate under the totality of the circumstances.

***Actual Innocence.*** The Defendant contends that the alleged statute-of-limitations defense may have been dispositive in this case. Nevertheless, the *Carr* factors call this Court to consider "whether the defendant has asserted his innocence." *Strother*, 977 F.3d at 443. "Under the *Carr* framework, the defendant must not only assert his innocence, but also provide a 'substantial supporting record' for this assertion in order to support his motion to withdraw." *Id.* Having determined that the Defendant pled guilty to participating in the conspiracy through at least 2015 and that the Superseding Indictment did not violate the statute of limitations, the Defendant has foreclosed any assertion of innocence. The Court finds that this favor weighs heavily against withdrawal.

***Delay in Filing.*** The *Carr* factors direct this Court to consider the temporal proximity between the plea and the request to withdraw the plea. The Defendant pled guilty to Count One of the Fourth Superseding Indictment on September 6, 2023. (Doc. No. 768). The Defendant filed this Motion to Withdraw on January 30, 2026. (Doc. No. 900). While the Defendant contends that this delay was due to the ineffective assistance of his previous counsel and newfound evidence in the Presentence Report, the Court notes that a Presentence Report has been on file with the Court since November 28, 2023. (Doc. No. 782). Moreover, the Fifth Circuit has held that even "three months between the entering of a guilty plea and the filing of

11

a motion to withdraw constitutes a significant delay that weighs against granting withdrawal." *Strother*, 977 F.3d at 447 (citing *United States v. Grant*, 117 F.3d 788, 790 (5th Cir. 1997); *United States v. Thomas*, 13 F.3d 151, 153 (5th Cir. 1994)). The Defendant waited two and a half years to request this withdrawal. Following the Fifth Circuit's guidelines, the Court finds that this factor weighs heavily against withdrawal.

*Close Assistance of Counsel.* The *Carr* factors also direct this Court to consider whether "close assistance of counsel was available to the defendant." *Id.* at 444–45. "Determining whether close assistance of counsel was available under *Carr* 'requires a fact-intensive inquiry' which is distinct from an inquiry into whether the defendant received effective assistance of counsel in accordance with the Sixth Amendment." *Id.* at 445. The Fifth Circuit has "previously found that close assistance of counsel was available where counsel negotiated a plea agreement, filed motions, discussed the case with the defendant, and explained the defendant's right and the weight of the evidence, . . . and where counsel was available throughout the proceedings and the defendant expressed satisfaction with counsel." *Id.* (citing *United States v. Benavides*, 793 F.2d 612, 613–18 (5th Cir. 1986)). In this case, the Defendant contends that because his attorney at the time he entered his guilty plea did not investigate or advise him of his possible statute-of-limitations defense, the Defendant did not have access to close assistance of counsel. Nevertheless, having found that the Superseding Indictment was filed within the statute of limitations and properly sealed, the Court finds no evidence that the Defendant's former counsel was ineffective. Throughout his rearraignment proceedings, the Defendant consistently stated that he was "satisfied with the advice and explanations" provided by his attorney and that he had discussed the charges with him. *See,*

12

*e.g.* (Doc. No. 898 at 7). The Court also notes that the Defendant has been appointed four different attorneys since his arrest in 2022, and at this point in time, the Defendant has two court-appointed attorneys to aid in his representation. The Court has been diligent in resolving any disputes between the Defendant and his attorneys, even to the point of appointing him an additional attorney to represent him at this stage of the proceeding, but the Court has not encountered any evidence that any of the four appointed attorneys were not acting in his best interest and were representing the Defendant to their best abilities. The Court finds that this factor, even giving the Defendant the benefit of the doubt is, at best, a draw.

***Original Plea.*** Next, the Court addresses whether the original plea was knowing and voluntary. "A guilty plea involves the waiver of constitutional rights, and thus must be 'voluntary, knowing, and intelligent.'" *Strother*, 977 F.3d at 447 (quoting *United States v. Lord*, 418 F.3d 466, 577 (5th Cir. 2005)). "This requires that the defendant understand the nature of the charges against him, the consequences of his plea, and the nature of the constitutional protection that he is waiving." *Id.* In this case, the Defendant argues that his plea was involuntary because his attorney did not adequately investigate his alleged statute-of-limitations defense. Nevertheless, throughout his rearraignment, the Court accepted the Defendant's guilty plea as knowing and voluntary because he repeatedly emphasized, under oath, that he was aware of his rights and the consequences of his guilty plea. *See generally* (Doc. No. 898). The Defendant stated under oath that no one had forced him to plead guilty, that he pled guilty of his own free will, and that he pled guilty because he was guilty. *See generally (id.)*. The Fifth Circuit "give[s] significant weight to a defendant's sworn testimony that his plea is voluntary and uncoerced," this Court gives significant weight to the Defendant's

13

statements in this case. *Strother*, 977 F.3d at 446. The Court finds that this factor weighs heavily against permitting the withdrawal.

***Judicial Economy and Prejudice to the Government.*** Lastly, the *Carr* factors ask this Court to consider "whether the government would suffer prejudice if the withdrawal motion were granted, whether withdrawal would substantially inconvenience the [C]ourt, and whether withdrawal would waster judicial resources." *Id.* at 447. This action has been pending for nearly ten years. At this stage in the proceeding, the Court has appointed four different attorneys to represent the Defendant (including two attorneys right now). There have been four different Presentence Investigation Reports and seven different addendums to those reports. *See, e.g.*, (Doc. Nos. 782, 783, 795, 796, 849, 858, 859, 873, 886, 887, 891, 892). The Court has granted continuances of the proceedings on multiple occasions. Moreover, the Government has represented to the Court that "[m]ost of the cooperating witnesses who would have testified at trial are now unavailable" and that "[m]ost co-defendants have already served their time in custody and have been released." (Doc. No. 903). At this stage in the proceedings, the withdrawal of the guilty plea would cause a significant strain on the judiciary and the Government. Accordingly, the Court finds that these three factors weigh heavily against withdrawal.

Consequently, when one considers all of the *Carr* factors, the factors overwhelmingly weigh against allowing the plea to be withdrawn.

14

### III.    Conclusion

For the foregoing reasons, the Court denies Defendant's Motions to Dismiss (Doc. Nos. 833, 857) and Motion to Withdraw Guilty Plea and to Continue Revocation Proceedings (Doc. No. 900).

It is so ordered.

Signed on this the _____ day of April 2026.

Andrew S. Hanen
United States District Judge